# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR SEARCH WARRANTS

I, Dustin Green, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.  I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure, 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) for (1) a search warrant for historical information associated with a Facebook account with ID number 100061855692715 (and user name Bonnie Parker) (the "**Target Account**"), believed to be used by Veronika Rodriguez, that is stored at premises owned, maintained, controlled, or operated by Facebook, Inc. ("Facebook"), a social networking company headquartered in Menlo Park, California; and (2) a search warrant for prospective location information associated with the Target Account. Specifically, the information to be searched is described in the following paragraphs and in Attachment A, and the particular things to be seized are described in Attachments B-1 and B-2.

2.  I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been since January 2020. I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. I also have approximately eight years of experience as a local law enforcement officer. I am currently assigned to the Violent Crime Squad of the FBI's Kansas City Division. My responsibilities include the investigation of possible violations of federal law, including investigation of crimes related to robbery, fugitives from justice, and crimes related to Hobbs Act violations. During my career, my investigations have included the use of various surveillance techniques and the execution of various search, seizure, and arrest warrants.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

4. Based on my training and experience and the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 3142, violation of supervised release, have been committed, are being committed, and will be committed by Veronika Rodriguez. There is also probable cause to search the information described in Attachment A for evidence, and seize information and items described in Attachments B-1 and B-2. There is also probable cause to believe that the location information described in Attachments B-1 and B-2 will assist law enforcement in arresting Veronika Rodriguez, who is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

## JURISDICTION

5. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

6. The United States, including the FBI, is conducting a criminal investigation of Veronika Rodriguez, and others known and unknown, regarding possible violations of 18 U.S.C. § 3142, violation of supervised release.

7. On or about June 8, 2020, at approximately 8:55 p.m., an individual later identified as DELSHAWN LEMONS and another male, later identified as Bobby BOOKER, entered the

2

Family Dollar, located at 4401 E. 50th Terrace, Kansas City, Missouri. LEMONS was wearing a dark blue hooded sweatshirt, white surgical mask, blue colored shorts with red and white lines, and gray and white shoes. LEMONS and BOOKER entered the Family Dollar and displayed firearms. After entering the Family Dollar, LEMONS walked behind the counter and pointed the firearm at VICTIM 1. LEMONS hands VICTIM 3, herein referred to as VERONIKA RODRIGUEZ, a bag and stated "put everything in the bag". LEMONS held VICTIM 1 at gunpoint and demanded he walk from behind the counter. After walking from behind the counter, LEMONS ordered VICTIM 1 to the ground. RODRIGUEZ placed approximately $3,102.14 from the register within the bag and handed it to LEMONS. BOOKER grabbed VICTIM 2 and ordered her to the ground. BOOKER remained with VICTIM 2 until exiting the Family Dollar. LEMONS and BOOKER exit the Family Dollar with the $3,102.14.

8. On or about June 24, 2020, VERONIKA RODRIGUEZ, was arrested on an unrelated robbery charge and transported to a law enforcement facility. RODRIGUEZ was provided Miranda warnings. RODRIGUEZ waived her Miranda rights and provided a statement. RODRIGUEZ identified LEMONS as a friend who previously approached her about helping set up other men for LEMONS to rob. RODRIGUEZ stated LEMONS approached her about helping set up other men for LEMONS to rob. RODRIGUEZ also stated LEMONS approached her about robbing the Family Dollar as early as May, 2020. LEMONS advised RODRIGUEZ that a plan to rob the Family Dollar was "in the works". RODRIGUEZ did not know LEMONS planned on robbing the Family Dollar on June 8, 2020. RODRIGUEZ denied communicating with LEMON while working during the robbery. RODRIGUEZ recognized LEMONS as the subject wearing the blue sweatshirt once he told her to put money in the bag. After the robbery, LEMONS did not talk to RODRIGUEZ for a couple of days. Talking to RODRIGUEZ, LEMONS indicated they would

have to divide the money from the robbery four ways because they needed to include the getaway driver. LEMONS repeatedly promised to give RODRIGUEZ a quarter of the robbery money that she was owed, but he had yet to pay her any, with his excuse being that he had to pay his "plug". During the interview RODRIGUEZ was shown a photo of LEMONS and she confirmed that it was the same person she was referring to as DELSHAWN LEMONS.

9. On August 26, 2020, a federal Grand Jury within the Western District of Missouri returned an indictment against VERONIKA RODRIGUEZ for Hobbs Act Robbery, in violation of 18 U.S.C. § 1951 (a) and 2. RODRIGUEZ was arrested pursuant to the federal arrest warrant on December 22, 2020. RODRIGUEZ was later released on bond from custody pending trial. However, on May 17, 2021, a federal arrest warrant for Veronika RODRIGUEZ was issued by United States Magistrate Judge Lajuana M. Counts for violations of her Pre-Trial release. RODRIGUEZ is considered a "Person to be Arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

10. On June 2, 4, and 7, 2021, a Facebook account with user name Bonnie Parker, user ID 100061855692715, posted multiple comments on posts made by other accounts. The profile photo for the account, which was created on January 12, 2021, shows a selfie photo of RODRIGUEZ and the most recent selfie photo of RODRIGUEZ was posted on May 28, 2021. I am familiar with RODRIGUEZ and her appearance due to my involement in the investigation of this case and both the selfie photos above are of RODRIGUEZ. Based on my training and experience, I believe the **Target Account** was and is currently still being used by RODRIGUEZ.

11. For the reasons listed above, I believe the **Target Account** is being utilized by RODRIGUEZ. I also believe that the requested historical and prospective information associated with the **Target Account** will greatly assist the FBI in effecting the arrest of RODRIGUEZ.

4

Specifically, the requested historical records will enable the FBI to identify patterns of life for RODRIGUEZ. These patterns of life will include general areas where she frequents and her frequent contacts, both of which will assist in locating her for the purpose of effecting her arrest. Additionally, the prospective GPS "pings" will assist the FBI by providing real-time location updates for the **Target Account** and information regarding what accounts are in contact with the **Target Account**. Both of these components will assist the FBI during the searches for RODRIGUEZ - a Person to be Arrested.

12. In my training and experience as a Special Agent, I know that fugitives will utilize their Facebook accounts to aid them in their endeavors to avoid law enforcement. These efforts to avoid law enforcement are recorded within Facebook's record systems and will often contain valuable information on a fugitive's whereabouts and those who are assisting them.

13. In my training and experience, I have learned that Facebook has technical capabilities that allows it to collect and generate location data including GPS data or latitiude-longitude data and other location information for each device accessing Facebook.

14. Based on my training and experience, I know that Facebook can collect location data including GPS data or latitude-longitude data and other location information for each device accessing Facebook.

## INFORMATION ABOUT FACEBOOK

15. Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com. Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

5

16. Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter. This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers (for password retrieval), physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a user identification number to each account.

17. Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

18. Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook. Depending on the user's privacy settings, Facebook may also obtain and store the physical location of the user's device(s) as they interact with the Facebook service on those device(s).

6

19. Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

20. Facebook allows user to upload photos and videos, which may include any metadata such as location that the user transmitted when he or she uploaded the photo or video. It also provides users the ability to "tag" (*i.e.*, label) other Facebook users in photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, the photos and videos associated with the user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

21. Facebook users can exchange private messages on Facebook with other users using Facebook Messenger. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. These chat communications are stored in the chat history for the account. Facebook also has a Video Calling feature, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

7

22. If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

23. Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

24. Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

25. Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

26. Facebook also has a Marketplace feature, which allows user to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

27. In addition to the application described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that user's access or use of that application may appear on the user's profile page.

28. Facebook also retains Internet Protocol ("IP") logs for a given UID or IP address. These logs may contain information about the actions taken by the UID or IP address on Facebook, including information about the type of action, the date and time of the action, and the UID and IP address associated with the action. For example, if a user views a Facebook profile, that user's IP

8

log would reflect the fact that the user viewed the profile and would show when and from what IP address the user did so.

29. Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

30. As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation. In my training and experience, the information associated with a Facebook account can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, by determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Additionally, Facebook builds geo-location into some of its services.

Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner. Lastly, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

31. Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

32. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Attachments B-1 and B-2. Upon receipt of the information described in Attachments B-1 and B-2, law enforcement personnel will review that information to locate the items relevant to the locating and arresting RODRIGUEZ.

33. Based on the forgoing, I request that the Court issue the proposed search warrants. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) &

10

(c)(1)(A). Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

34. With respect to the requested search warrant relating to prospective location information, I request that the Court issue this warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c). I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the **Target Account** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1).

Search Warrant Nos.: 21-SW-00287-LMC
21-SW-00288-LMC

## REQUEST FOR SEALING

35. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all the Subjects of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation, including by giving targets an opportunity to destroy or tamper with evidence, change patterns of behavior, notify confederates, and flee from prosecution.

Respectfully submitted,

_____
Dustin Green
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me via reliable electronic means on the __9th__ of June 2021.

9:44 AM, Jun 9, 2021

_____
Honorable Lajuana M. Counts
United States Magistrate Judge
Western District of Missouri



12